

FILED

1-14-10

JAN 14 2010

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 830 |
| v. | ) | |
| | ) | Judge Harry D. Leinenweber |
| ILYAS KASHMIRI, | ) | MAGISTRATE JUDGE KEYS |
| ABDUR REHMAN HASHIM SYED, | ) | SUPERSEDING INDICTMENT |
| a/k/a "Major Abdur Rehman," | ) | |
| a/k/a "Pasha," | ) | |
| DAVID COLEMAN HEADLEY, | ) | Violations: Title 18, United |
| a/k/a "Daood Gilani," | ) | States Code, Sections 956(a)(1), |
| TAHAWWUR HUSSAIN RANA | ) | 2332(a)(1) and (2); 2332f(a)(2), |
| | ) | 2339A, 2339B and 2. |

## COUNT ONE

### (Conspiracy to Bomb Places of Public Use in India)

The SPECIAL JANUARY 2009 GRAND JURY charges:

1.      At times material herein:

#### Relevant Entities and Individuals

A.      An organization known as "*Lashkar e Tayyiba*" (the "Army of the Good") (hereafter "*Lashkar*") operated in Pakistan for the principal purpose of engaging in acts of violence to separate from India portions of the Indian state of Jammu and Kashmir. *Lashkar* maintained training camps in Pakistan and trained operatives to carry out terrorist attacks against both military targets and civilians in India. *Lashkar* was designated by the United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act.

B.     Defendant DAVID COLEMAN HEADLEY was a United States citizen and former resident of Pakistan who at times maintained a residence in Chicago, Illinois, and was associated with *Lashkar*.  HEADLEY attended *Lashkar* training camps in Pakistan which began in or around February 2002, August 2002, April 2003, August 2003 and December 2003.  HEADLEY assisted senior *Lashkar* personnel in planning and preparing for terrorist attacks.

C.     First World Immigration Services ("First World") was an immigration services business with its principal place of business in Chicago, Illinois.  First World used the business name "Immigrant Law Center," and also maintained offices in New York City; Toronto, Canada; and elsewhere.

D.     Tahawwur Hussain Rana was a resident of Chicago, Illinois who owned First World and controlled its operations, and a long-time associate of HEADLEY.

E.     An individual herein referred to as "*Lashkar* Member A" was a resident of Pakistan associated with *Lashkar* who supervised others associated with *Lashkar* and served as a "handler" for defendant HEADLEY and others who were directed to carry out actions relating to planning, preparing for, and carrying out terrorist attacks on behalf of *Lashkar*.

F.     An individual herein referred to as "*Lashkar* Member B" was a resident of Pakistan associated with *Lashkar* who trained others in combat techniques for use in terrorist attacks.

2

G. An individual herein referred to as "*Lashkar* Member C" was a resident of Pakistan and one of *Lashkar's* commanders.

H. An individual herein referred to as "*Lashkar* Member D" was a resident of Pakistan and one of *Lashkar's* commanders.

I. An individual herein referred to as "Person A" was a resident of Pakistan who participated in planning and funding attacks carried out by *Lashkar*.

2. Beginning no later than in or about late 2005, and continuing through on or about October 3, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere within and without the jurisdiction of the United States,

DAVID COLEMAN HEADLEY,

defendant herein, conspired with *Lashkar* Members A, B, C, and D, and others known and unknown to the grand jury, to deliver, place, discharge and detonate explosives and other lethal devices in, into and against places of public use, state and government facilities, public transportation systems, and infrastructure facilities in India, with the intent to cause death and serious bodily injury, and with the intent to cause extensive destruction of such places and facilities and where such destruction would likely result in major economic loss; and DAVID HEADLEY was a national of the United States and was found in the United States.

3

**Manner and Means of the Conspiracy**

*Preparation for the Surveillance Trips*

3.  It was part of the conspiracy that in or about late 2005, *Lashkar* Member A, *Lashkar* Member B, and *Lashkar* Member D advised defendant DAVID COLEMAN HEADLEY that HEADLEY would be traveling to India to perform surveillance of potential targets for attack by *Lashkar*, and recommended that HEADLEY take steps to conceal his association with Pakistan and his Muslim religion during his travels in India.

4.  It was further part of the conspiracy that in or about February 2006, in Philadelphia, Pennsylvania, defendant HEADLEY changed his given name of "Daood Gilani" to "David Coleman Headley" in order to facilitate his activities on behalf of *Lashkar* by enabling him to present himself in India as an American who was neither Muslim nor Pakistani.

5.  It was further part of the conspiracy that in or about the spring of 2006, *Lashkar* Member A and *Lashkar* Member D discussed with defendant HEADLEY the idea that HEADLEY could open an immigration office in Mumbai, India, as a cover for his surveillance activities in India.

6.  It was further part of the conspiracy that in or about June 2006, defendant HEADLEY traveled to Chicago, Illinois, advised Tahawwur Hussain Rana of his assignment to perform surveillance for potential targets in India, and obtained Rana's approval for opening a First World office in Mumbai, India, as cover for these activities. Rana directed

4

an individual associated with First World to prepare documents to support HEADLEY's cover story with respect to the opening of a First World office in Mumbai, and advised HEADLEY regarding how to obtain a visa for travel to India. In applying for his visa for travel to India, HEADLEY misrepresented his birth name, father's true name, and the purpose for his travel.

7.  It was further part of the conspiracy that in or about July 2006, Person A provided to defendant HEADLEY approximately $25,000 to, among other purposes, establish and operate the Mumbai office of First World and pay for living expenses while defendant HEADLEY carried out his assignments for *Lashkar*.

*The Surveillance Trips*

8.  It was further part of the conspiracy that, as set forth in greater detail below, starting in or about September 2006, February 2007, September 2007, April 2008, and July 2008, defendant HEADLEY traveled to Mumbai, India for extended periods for the purpose of conducting surveillance of possible targets of attacks by *Lashkar*, using his association with First World as cover for his travels. Prior to HEADLEY's departure for each of these trips, *Lashkar* Member A, Person A and others, instructed HEADLEY regarding locations where he was to conduct video surveillance in and around Mumbai, India, as well as other locations in India. After each trip, HEADLEY traveled to Pakistan, where he met with *Lashkar* Member A, Person A and persons associated with *Lashkar* to report on the results

of his surveillance, and provided *Lashkar* Member A and Person A with photographs and videos from the surveillance.

*The September 2006 Surveillance in India*

9.     It was further part of the conspiracy that prior to defendant HEADLEY's surveillance activities in India starting in or about September 2006, *Lashkar* Member A and Person A instructed HEADLEY to get settled in India, including by opening the business and obtaining an apartment, and to take photographs and make videos of various locations of public significance in India, including but not limited to, the Taj Mahal hotel in Mumbai.

10.     It was further part of the conspiracy that in or about November 2006, defendant HEADLEY opened the Mumbai office of First World for the purpose of providing cover for his travel and activities in India on behalf of *Lashkar*.

11.     It was further part of the conspiracy that starting in or about September 2006, defendant HEADLEY conducted surveillance on behalf of *Lashkar*, including taking pictures and making videotapes, of various targets in India, including but not limited to, the Taj Mahal hotel in Mumbai.

12.     It was further part of the conspiracy that following these initial surveillance activities, defendant HEADLEY traveled to Pakistan, where he met with *Lashkar* Members A and B and Person A and provided them with accounts of his surveillance. HEADLEY provided photographs and videos taken during the surveillance to *Lashkar* Member A and Person A.

6

*The February 2007 Surveillance in India*

13.     It was further part of the conspiracy that prior to defendant HEADLEY's surveillance activities in India starting in or about February 2007, *Lashkar* Member A and Person A separately instructed HEADLEY to conduct surveillance of the second floor of the Taj Mahal hotel in Mumbai, specifically including the conference rooms and ballrooms.

14.     It was further part of the conspiracy that in or about February 2007, defendant HEADLEY conducted surveillance on behalf of *Lashkar*, including taking pictures and making videotapes, of various targets in India, including but not limited to the Taj Mahal hotel (where he made detailed videos of the second floor conference rooms and ballrooms), and the Oberoi hotel, both in Mumbai.

15.     It was further part of the conspiracy that following these surveillance activities, defendant HEADLEY traveled to Pakistan, where he met with *Lashkar* Members A, B and D, and Person A, and provided them with accounts of his surveillance. HEADLEY provided photographs and videos taken during the surveillance to *Lashkar* Member A and Person A.

*The September 2007 Surveillance in India*

16.     It was further part of the conspiracy that prior to defendant HEADLEY's surveillance activities in India starting in or about September 2007, *Lashkar* Member A and Person A separately instructed HEADLEY to conduct further surveillance of the second floor of the Taj Mahal hotel, specifically including the conference rooms, and to obtain schedules of future conferences at the hotel.

17.     It was further part of the conspiracy that starting in or about September 2007, defendant HEADLEY conducted surveillance, including taking pictures and making videotapes, of various targets in India, including but not limited to the Taj Mahal hotel. In addition, HEADLEY attempted to obtain a schedule of conferences to be held at the Taj Mahal hotel.

18.     It was further part of the conspiracy that following these surveillance activities, defendant HEADLEY traveled to Pakistan, where he met with *Lashkar* Member A and Person A, and provided them with accounts of his surveillance. HEADLEY provided photographs and videos taken during the surveillance to *Lashkar* Member A and Person A. During one of HEADLEY's meetings with persons associated with *Lashkar*, *Lashkar* Member A  displayed to HEADLEY a styrofoam mockup of the Taj Mahal hotel. During a meeting with Person A, HEADLEY was provided with approximately $2,000 worth of Indian currency for expenses in connection with HEADLEY's activities in India.

*The April 2008 Surveillance in India*

19.     It was further part of the conspiracy that in or about March 2008, defendant HEADLEY met with *Lashkar* Members A and B and other persons associated with *Lashkar*, and discussed potential landing sites for a team of attackers who would arrive in Mumbai by sea. In or about March 2008, *Lashkar* Member A and other persons associated with *Lashkar* instructed HEADLEY to take boat trips in and around the Mumbai harbor and to take

8

surveillance video of various locations. *Lashkar* Member A also provided HEADLEY with approximately $1000 worth of Indian currency to use for his expenses in Mumbai.

20.    It was further part of the conspiracy that in or about March or April 2008, *Lashkar* Members A and B provided defendant HEADLEY with a global positioning system (GPS) device. *Lashkar* Members A and B showed HEADLEY how to enter locations into the GPS device and instructed him to use it to record the locations of possible landing sites.

21.    It was further part of the conspiracy that in or about April 2008, defendant HEADLEY conducted surveillance of the Mumbai harbor and surrounding areas, using the GPS device and making videotapes. HEADLEY also conducted surveillance of, among other locations, the Chhatarapati Shivaji Terminus train station, using the GPS device and making videotapes.

22.    It was further part of the conspiracy that following these surveillance activities, defendant HEADLEY traveled to Pakistan, where he met separately with *Lashkar* Member A and Person A, and provided them with accounts of his surveillance, as well as with his recommendations as to which landing sites the attackers should use. HEADLEY provided photographs and videos taken during the surveillance to these same persons, and the GPS device to *Lashkar* Member A.

*The July 2008 Surveillance in India*

23.    It was further part of the conspiracy that prior to defendant HEADLEY's surveillance activities in India starting in or about July 2008, *Lashkar* Member A instructed

9

HEADLEY to conduct further surveillance of various locations in Mumbai using the GPS device, which was returned to HEADLEY. *Lashkar* Members A and B discussed with HEADLEY the need to do further surveillance of the Taj Mahal hotel and landing points for the attackers, including videotaping the route from a police station to the Taj Mahal hotel. Both *Lashkar* Member A and Person A separately instructed HEADLEY to conduct videotape surveillance of the Chabad House, a Jewish community center located in Mumbai.

24. It was further part of the conspiracy that in or about June 2008, Person A provided to defendant HEADLEY additional funds in the amount of approximately $1,500 worth of Indian currency to keep open the First World office in Mumbai, but approved closing that office in the future and opening a new business in Delhi, India, to be used as cover for future activities by HEADLEY.

25. It was further part of the conspiracy that starting in or about July 2008, defendant HEADLEY conducted surveillance, including taking pictures and making videotapes, of various targets, including but not limited to, the Taj Mahal hotel, the Chabad House, the Chhatarapati Shivaji Terminus train station, the Leopold Café and various landing sites, and entered various locations into the GPS device.

26. It was further part of the conspiracy that while defendant HEADLEY was in India for the purpose of conducting surveillance starting in or about July 2008, Person A communicated with HEADLEY by passing messages to HEADLEY through Tahawwur Hussain Rana.

27.    It was further part of the conspiracy that following his July 2008 surveillance activities in India, HEADLEY traveled to Pakistan, met at times with *Lashkar* Members A and B and Person A, and provided them with accounts of his surveillance. HEADLEY provided photographs and videos taken during the surveillance to *Lashkar* Member A and Person A, and the GPS device to *Lashkar* Member A.

### The Training of the Attackers

28.    It was further part of the conspiracy that in or about July and August 2008, *Lashkar* Member B and others were training a number of young men in Pakistan in various skills and tactics to be used in carrying out terrorist attacks in Mumbai, including combat tactics, room entry, hostage rescue, nautical training and swimming.

### The November 2008 Attacks

29.    It was further part of the conspiracy that beginning on or about November 26, 2008, and continuing through on or about November 28, 2008, ten attackers trained by *Lashkar* carried out multiple assaults with firearms, grenades and improvised explosive devices against multiple targets in Mumbai, India, including attacks on the Taj Mahal hotel, the Oberoi hotel, the Leopold Café, the Chabad House, and the Chhatarapati Shivaji Terminus train station, killing approximately 164 persons.

30.    It was further part of the conspiracy that during the course of attacks in Mumbai, the attackers were in telephonic contact with *Lashkar* Members A, B and C, all of whom were then located in Pakistan. More specifically, during the course of the attacks, the

11

attackers were advised to, among other actions, kill hostages and throw grenades. *Lashkar* Member A also sought to arrange the release of a hostage in exchange for the release of a captured attacker.

31.     It was further part of the conspiracy that following the November 2008 attacks, Person A advised HEADLEY to avoid contact with him until further notice and to remove any incriminating materials from his home in Pakistan.

32.     It was further part of the conspiracy that in or about March 2009, defendant HEADLEY conducted surveillance of various targets in India, including but not limited to, the National Defense College in Delhi and Chabad Houses in several cities in India.

33.     It was further part of the conspiracy that the members of the conspiracy concealed, misrepresented and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the conspiracy and the acts done in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 2332f(a)(2).

## COUNT TWO

### (Conspiracy to Murder and Maim in India)

The SPECIAL JANUARY 2009 GRAND JURY further charges:

1.     The allegations of paragraph 1 of Count One of this Superseding Indictment are realleged and incorporated as though fully set forth herein.

2.     Beginning no later than in or about late 2005, and continuing through on or about October 3, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere within and without the jurisdiction of the United States,

DAVID COLEMAN HEADLEY,

defendant herein, conspired with *Lashkar* Members A, B, C, and D, Person A, and others known and unknown to the grand jury, to commit acts outside the United States that would constitute the offenses of murder and maiming if committed in the special maritime and territorial jurisdiction of the United States, namely, murder and maiming in connection with attacks carried out by *Lashkar e Tayyiba* in India.

### Manner and Means of the Conspiracy

3.     Paragraphs 3 through 33 of Count One of this Superseding Indictment are reincorporated as if fully alleged herein.

### Overt Acts

4.     To effect the objects of the conspiracy, one or more conspirators committed acts within the jurisdiction of the United States, namely:

13

a.      In or about February 2006, in Philadelphia, Pennsylvania, defendant HEADLEY changed his given name of "Daood Gilani" to "David Coleman Headley" in order to facilitate his activities on behalf of *Lashkar* by enabling him to present himself in India as an American who was neither Muslim nor Pakistani;

b.      In or about June 2006, defendant HEADLEY advised Tahawwur Hussain Rana of his assignment to perform surveillance for potential targets in India, and obtained Rana's approval for opening a First World office in Mumbai, India, as cover for these activities;

c.      In or about June 2006, in Chicago, Illinois, defendant HEADLEY applied for a visa for travel to India and in so doing misrepresented his birth name, father's true name, and the purpose for his travel;

d.      In or about July 2006, defendant HEADLEY departed the United States, traveling overseas, in order to begin his first surveillance trip to India;

e.      In or about June 2007, defendant HEADLEY met with Rana in Chicago, Illinois, and discussed ways that Rana could further HEADLEY's work in India; and

f.      In or about July 2008, Person A communicated with HEADLEY by passing messages to HEADLEY through Rana, who was then in Chicago, Illinois.

All in violation of Title 18, United States Code, Section 956(a)(1).

14

## COUNTS THREE THROUGH EIGHT

### (Murder of United States Nationals In India)

The SPECIAL JANUARY 2009  GRAND JURY further charges:

1.      The allegations of paragraph 1 of Count One of this Superseding Indictment are realleged and incorporated as though fully set forth herein.

2.      On or about the dates listed below, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere within and without the jurisdiction of the United States,

### DAVID COLEMAN HEADLEY,

defendant herein, aided and abetted the murders of United States nationals while such nationals were outside the United States, in that defendant aided and abetted the murders in Mumbai, India, of:

| Count: | Date of Offense: | Victim: |
|--------|------------------|---------|
| THREE | November 26, 2008 | BEN ZION CHROMAN |
| FOUR | November 27, 2008 | GAVRIEL HOLTZBERG |
| FIVE | November 26, 2008 | SANDEEP JESWANI |
| SIX | November 26, 2008 | ALAN SCHERR |
| SEVEN | November 26, 2008 | NAOMI SCHERR |
| EIGHT | November 27, 2008 | ARYEH LEIBISH TEITELBAUM |

All in violation of Title 18, United States Code, Sections 2332(a)(1) and 2.

15

## COUNT NINE

### (Conspiracy to Provide Material Support to Terrorism in India)

The SPECIAL JANUARY 2009 GRAND JURY further charges:

1.     The allegations of paragraph 1 of Count One of this Superseding Indictment are realleged and incorporated as though fully set forth herein, except that Tahawwur Hussain Rana is identified as a defendant for purposes of this Count.

2.     Beginning no later than in or about late 2005, and continuing through on or about October 3, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere:

DAVID COLEMAN HEADLEY and
TAHAWWUR HUSSAIN RANA,

defendants herein, conspired with each other, and others known and unknown to the grand jury, to provide material support and resources, namely, personnel, tangible property, money and false documentation and identification, and to conceal and disguise the nature, location, source and ownership of such support and resources, knowing and intending that they were to be used in the preparation for, and in carrying out, violations of Title 18, United States Code, Sections 2332f and 956(a)(1), as charged in Counts One and Two of this Superseding Indictment, and death resulted to approximately 164 persons.

16

## **Manner and Means of the Conspiracy**

3.      Paragraphs 3 through 33 of Count One of this Superseding Indictment are reincorporated as if fully alleged herein, except that Tahawwur Hussain Rana is identified as a defendant for purposes of this Count.

All in violation of Title 18, United States Code, Section 2339A.

## COUNT TEN

### (Conspiracy to Murder and Maim in Denmark)

The SPECIAL JANUARY 2009 GRAND JURY further charges:

1.    The allegations of the following subparagraphs of paragraph 1 of Count One of this Superseding Indictment are realleged and incorporated as though fully set forth herein:

Subparagraph A (relating to *Lashkar e Tayyiba*);

Subparagraph B (relating to defendant HEADLEY);

Subparagraph C (relating to First World Immigration Service);

Subparagraph D (relating to Tahawwur Hussain Rana); and

Subparagraph E (relating to *Lashkar* Member A).

2.    At times material to this Superseding Indictment:

A.    *Harakat ul Jihad al Islami* (the "Islamic Struggle Movement") (hereafter "*HUJI*") was an organization that trained terrorists and executed attacks in, among other areas, the regions of the state of Kashmir and Jammu under Indian control. *HUJI* was listed by the United States Department of State as a terrorist group relevant to the global war on terrorism.

B.    *Al Qaeda* ("the Base") was a terrorist organization that sought to carry out attacks against Western interests worldwide. Among other targets, *al Qaeda* sought to attack the government and civilians of the United States; other Western governments and civilians; and other persons, governments and institutions that did not follow the

18

interpretation of Islam promoted by *al Qaeda*. The leadership of *al Qaeda* included, among others, Mustafa Abu al Yazid, a/k/a "Sheik Said al Masri." *Al Qaeda* maintained a media wing known as "As Sahab Media." *Al Qaeda* was designated by the United States Department of State as a Foreign Terrorist Organization. In or about June 2008, *al Qaeda,* through As Sahab Media, took credit for an attack on the Danish Embassy in Islamabad, Pakistan, and called for further attacks against Danish interests to avenge the publication (and re-publication) of the cartoons of the Prophet Mohamed, as described further in subparagraph E. In or about August 2008, *al Qaeda* released a video ("the *al Qaeda* video") through As Sahab Media calling for further attacks in retaliation for the publication of the cartoons. Mustafa Abu al Yazid, among others, appeared on the video.

C.     Defendant ILYAS KASHMIRI was an influential leader of *HUJI.* Beginning in or about 2007, KASHMIRI based his operations in the Federally Administered Tribal Areas of western Pakistan, an area which served as a haven for terrorist organizations, including *al Qaeda.* KASHMIRI was in regular contact with *al Qaeda* and in particular with Mustafa Abu al Yazid, a/k/a "Sheik Said al Masri."

D.     Defendant ABDUR REHMAN HASHIM SYED was a resident of Pakistan and former member of the Pakistani military who was associated with defendant ILYAS KASHMIRI and *Lashkar* Member A.

E.     The Danish daily newspaper *Morgenavisen Jyllands-Posten ("Jyllands Posten")* published an article in September 2005 entitled "Muhammeds ansigt" ("The face

19

of Mohamed"). The article consisted of twelve cartoons, some of which depicted the Prophet Mohamed, setting off protests in the Muslim world. The article contained explanatory text written by an Editor A, and a cartoon drawn by Cartoonist A. In or about February 2008, the *Jyllands-Posten* and other newspapers in Denmark republished one of the cartoons which had drawn particularly strong criticism.

3.      Beginning no later than in or about October 2008, and continuing through on or about October 3, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere within and without the jurisdiction of the United States:

ILYAS KASHMIRI,
ABDUR REHMAN HASHIM SYED, and
DAVID COLEMAN HEADLEY,

defendants herein, conspired with each other, and others known and unknown to the grand jury, to commit acts outside the United States that would constitute the offenses of murder and maiming if committed in the special maritime and territorial jurisdiction of the United States, namely, murder and maiming in connection with an attack to be carried out against the facilities of *Jyllands-Posten*, located in Denmark, and at least two of its employees: Editor A and Cartoonist A.

**Manner and Means of the Conspiracy**

4.      It was part of the conspiracy that in or about October 2008, *Lashkar* Member A and HEADLEY met in Pakistan and discussed the prospect of an attack on the *Jyllands-Posten* newspaper, which would be preceded by extensive surveillance work to be performed

20

by HEADLEY. HEADLEY recorded and saved notes reflecting the attack plan he discussed with *Lashkar* Member A.

5.      It was further part of the conspiracy that in or about October 2008, *Lashkar* Member A provided defendant HEADLEY with a thumb drive containing information about Denmark, the city of Copenhagen and the *Jyllands-Posten* newspaper.

6.      It was further part of the conspiracy that in or about late December 2008 and early January 2009, after reviewing with Tahawwur Hussain Rana how defendant HEADLEY had performed the surveillance of the targets attacked in Mumbai in November 2008, HEADLEY advised Rana of the planned attack on the *Jyllands-Posten* and his intended travel to Denmark for the purpose of performing surveillance of the *Jyllands-Posten* facilities. HEADLEY obtained Rana's approval and assistance to identify HEADLEY as a representative of First World, to falsely represent that First World was planning to open an office in Copenhagen, and to gain entry to the *Jyllands-Posten*'s offices by falsely expressing interest in placing an advertisement for First World in the newspaper. Before leaving Chicago, Illinois, HEADLEY and Rana caused to be made business cards that identified HEADLEY as a representative of the Immigrant Law Center.

7.      It was further part of the conspiracy that in or about late December 2008 and early January 2009, defendant HEADLEY, while in Chicago, Illinois, sent emails to, and received emails from, defendant ABDUR REHMAN HASHIM SYED in order to continue

planning for the attack and coordinate HEADLEY's travel to Denmark to conduct surveillance.

8.     It was further part of the conspiracy that in or about January 2009, defendant HEADLEY traveled from Chicago, Illinois, to Copenhagen, Denmark, to conduct surveillance of the *Jyllands Posten* newspaper offices in the cities of Copenhagen and Aarhus in Denmark.

9.     It was further part of the conspiracy that on or about January 20, 2009, defendant HEADLEY obtained entry to the *Jyllands Posten* newspaper office in Copenhagen on the pretext that he was seeking to place an ad on behalf of First World in the newspaper. HEADLEY also scouted and videotaped the surrounding areas.

10.     It was further part of the conspiracy that on or about January 23, 2009, defendant HEADLEY obtained entry to the *Jyllands Posten* newspaper office in Aarhus, on the pretext that he was seeking to place an ad on behalf of First World in the newspaper. HEADLEY also scouted the surrounding areas.

11.     It was further part of the conspiracy that on or about January 29, 2009, Tahawwur Hussain Rana, posing as defendant HEADLEY, sent an email to the *Jyllands Posten* newspaper pretending to be interested in placing an advertisement in the newspaper on behalf of First World.

12.     It was further part of the conspiracy that in or about late January 2009, defendant HEADLEY traveled to Pakistan and met separately with *Lashkar* Member A and

defendant ABDUR REHMAN HASHIM SYED concerning the planned attack on the newspaper and provided each with videotapes of his Copenhagen surveillances. Subsequently, in or about March 2009, *Lashkar* Member A advised HEADLEY that *Lashkar* put the attack on the newspaper on hold due to pressure on *Lashkar* resulting from the November 2008 Mumbai attacks.

13.     It was further part of the conspiracy that in or about January 2009, defendant ABDUR REHMAN HASHIM SYED provided the *al Qaeda* video to defendant HEADLEY in Pakistan.

14.     It was further part of the conspiracy that in or about February 2009, defendant ABDUR REHMAN HASHIM SYED took defendant HEADLEY to meet with defendant ILYAS KASHMIRI in the Waziristan region of Pakistan. During the meeting, KASHMIRI indicated that he had already reviewed the Copenhagen videotapes made by HEADLEY and suggested that they consider using a truck bomb in the operation. KASHMIRI also indicated that he could provide manpower for the operation and that the participation of *Lashkar* was not necessary.

15.     It was further part of the conspiracy that in or about May 2009, defendants ABDUR REHMAN HASHIM SYED and HEADLEY went again to meet with defendant KASHMIRI in Waziristan. During this meeting, KASHMIRI advised that he had met with a European contact who could provide HEADLEY with money, weapons and manpower for

the attack on the newspaper. KASHMIRI directed HEADLEY to meet with KASHMIRI's European contacts.

16.    It was further part of the conspiracy that in or about July 2009, after defendant ABDUR REHMAN HASHIM SYED was arrested by Pakistani authorities, defendant HEADLEY contacted associates in Pakistan in an effort to learn whether he would be able to continue working with ABDUR REHMAN HASHIM SYED.

17.    It was further part of the conspiracy that in or about July 2009, defendant HEADLEY, from Chicago, sent a messenger to meet with defendant KASHMIRI in Waziristan to advise KASHMIRI of the arrest of defendant ABDUR REHMAN SAYED and his unsuccessful efforts to contact KASHMIRI's European contacts. KASHMIRI sent back word that the planned operation in Denmark should continue and that HEADLEY should continue to attempt to contact KASHMIRI's European contacts at the telephone numbers already provided.

18.    It was further part of the conspiracy that in or about late July and early August 2009, defendant HEADLEY traveled from Chicago, Illinois, to various places in Europe, including Copenhagen, Denmark, to conduct additional surveillance of the *Jyllands-Posten* newspaper office and the surrounding area. HEADLEY made approximately 13 additional surveillance videos. During the trip, HEADLEY also attempted to obtain assistance from Kashmiri's European contacts.

24

19.     It was further part of the conspiracy that in or about July 2009, defendant HEADLEY provided the *al Qaeda* video to Rana in Chicago, Illinois.

20.     It was further part of the conspiracy that on or about August 5, 2009, defendant HEADLEY returned to the United States, falsely advising a Customs and Border Patrol inspector at the airport in Atlanta that he had visited Europe for business reasons related to First World.

21.     It was further part of the conspiracy that on or about August 22, 2009, defendant HEADLEY, from Chicago, Illinois, spoke with defendant ABDUR REHMAN HASHIM SYED (who had been released from custody) in Pakistan concerning, among other things, the efforts by ABDUR REHMAN HASHIM SYED to contact defendant KASHMIRI, and the plans for the operation in Denmark.

22.     It was further part of the conspiracy that in or about September 2009, defendant HEADLEY sought to pass a message through defendant ABDUR REHMAN HASHIM SYED to defendant KASHMIRI concerning suggestions from HEADLEY concerning changes to the plan for the attack on the *Jyllands-Posten* in Copenhagen.

23.     It was further part of the conspiracy that in or about September 2009, defendant ABDUR REHMAN HASHIM SYED, from Pakistan, communicated with defendant HEADLEY, in Chicago, Illinois, by telephone and email concerning reports that defendant KASHMIRI had been killed in a drone attack and the implications of KASHMIRI's possible death for the plan for the attack on the *Jyllands-Posten* in Copenhagen.

24.     It was further part of the conspiracy that in or about September 2009, defendant HEADLEY and Rana, in Chicago, Illinois and elsewhere in the Northern District of Illinois, spoke concerning reports that defendant KASHMIRI had been killed in a drone attack and the implications of KASHMIRI's possible death for the plan for the attack on the *Jyllands-Posten* in Copenhagen.

25.     It was further part of the conspiracy that in or about late September 2009, defendant ABDUR REHMAN HASHIM SYED, from Pakistan, communicated with defendant HEADLEY, in Chicago, Illinois, by telephone and email to report that defendant KASHMIRI had not been killed in a drone attack and that KASHMIRI was anxious to move forward with the plan for the attack on the *Jyllands-Posten* in Copenhagen.

26.     It was further part of the conspiracy that in or about the late summer of 2009, Rana and HEADLEY agreed that funds that had been provided to Rana could be used to fund the plot to attack the *Jyllands-Posten* newspaper in Copenhagen.

27.     It was further part of the conspiracy that on or about October 3, 2009, defendant HEADLEY traveled to O'Hare Airport in Chicago, Illinois, intending to ultimately travel to Pakistan in order to meet with defendants ABDUR REHMAN HASHIM SYED and KASHMIRI, and to deliver to them the approximately 13 surveillance videos.

28.     It was further part of the conspiracy that the members of the conspiracy concealed, misrepresented and hid, and caused to be concealed, misrepresented, and hidden,

the existence and purpose of the conspiracy and the acts done in furtherance of the conspiracy.

## Overt Acts

29.     To effect the objects of the conspiracy, one or more conspirators committed acts within the jurisdiction of the United States, namely:

       a.     In or about December 2008 and January 2009, in Chicago, Illinois, defendant HEADLEY advised Rana of his plan to perform surveillance of the *Jyllands-Postens* facility, and obtained Rana's approval to identify himself as a representative of First World to assist in performing, and as cover for, this activity;

       b.     In or about December 2008 and January 2009, defendant HEADLEY, while in Chicago, Illinois, sent emails to, and received emails from, defendant ABDUR REHMAN HASHIM SYED in order to continue planning for the attack and to coordinate HEADLEY's travel to Denmark to conduct surveillance;

       c.     In or about January 2009, in Chicago, Illinois, defendant HEADLEY and Rana caused to be made business cards that identified HEADLEY as a representative of First World;

       d.     In or about January 2009, defendant HEADLEY departed the United States, traveling overseas, in order to begin his first surveillance trip to Denmark;

e.      On or about January 29, 2009, while in Chicago, Illinois, Rana, posing as defendant HEADLEY, sent an email to the *Jyllands-Posten* newspaper pretending to be interested in placing an advertisement in the newspaper;

f.      In or about July 2009, while in Chicago, Illinois, defendant HEADLEY sent an email to associates in Pakistan in an effort to learn whether he would be able to continue working with defendant ABDUR REHMAN HASHIM SYED;

g.      In or about July 2009, while in Chicago, Illinois, defendant HEADLEY communicated with a messenger to report to defendant KASHMIRI in Pakistan concerning the arrest of defendant ABDUR REHMAN HASHIM SYED and HEADLEY's unsuccessful efforts to contact KASHMIRI's European contacts;

h.      In or about July 2009, defendant HEADLEY departed the United States, traveling overseas, in order to begin his second surveillance trip to Denmark and to meet with KASHMIRI's European contacts;

i.      On or about August 5, 2009, defendant HEADLEY advised a Customs and Border Patrol inspector at the Atlanta airport that he had visited Europe for business reasons related to First World;

j.      In or about August 2009, defendant HEADLEY provided the *al Qaeda* video to Rana in Chicago, Illinois;

k.      In or about August and September 2009, while in Chicago, defendant HEADLEY communicated with defendant ABDUR REHMAN HASHMI SYED, who was

in Pakistan, concerning passing messages to defendant KASHMIRI and reports of the death of defendant KASHMIRI and the implications of that possible death for the plan for the attack on the *Jyllands-Posten* in Copenhagen;

l. In or about September 2009, in Chicago, Illinois, and elsewhere in the Northern District of Illinois, defendant HEADLEY communicated with Rana concerning reports of the death of defendant KASHMIRI and the implications of that possible death for the plan for the attack on the *Jyllands-Posten* in Copenhagen;

m. In or about the late summer of 2009, in Chicago, Illinois, defendant HEADLEY and Rana discussed and agreed that funds that had been provided to Rana could be used to fund the plot to attack the *Jyllands-Posten* newspaper in Copenhagen; and

n. On or about October 3, 2009, in Chicago, Illinois, defendant HEADLEY traveled to O'Hare Airport for the purpose of traveling to Pakistan to meet with defendants KASHMIRI and ABDUR REHMAN HASHIM SYED.

All in violation of Title 18, United States Code, Section 956(a)(1).

## COUNT ELEVEN

**(Conspiracy to Provide Material Support to Terrorism in Denmark)**

The SPECIAL JANUARY 2009 GRAND JURY further charges:

1.      Paragraphs 1 and 2 of Count Ten of this Superseding Indictment are reincorporated as if fully alleged herein, except that Tahawwur Hussain Rana is identified as a defendant for purposes of this Count.

2.      Beginning no later than in or about October 2008, and continuing through on or about October 3, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

> ILYAS KASHMIRI,
> ABDUR REHMAN SYED,
> DAVID COLEMAN HEADLEY, and
> TAHAWWUR HUSSAIN RANA,

defendants herein, conspired with others known and unknown to the grand jury, to provide material support and resources, namely, personnel, tangible property and false documentation and identification, and to conceal and disguise the nature, location, source and ownership of material support and resources, knowing and intending that they be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Section 956(a)(1) (conspiracy to kill, kidnap, maim or injure persons in a foreign country), as charged in Count Ten of this Superseding Indictment.

30

## **Manner and Means of the Conspiracy**

3.      Paragraphs 3 through 28 of Count Ten of this Superseding Indictment are reincorporated as if fully alleged herein, except that Tahawwur Hussain Rana is identified as a defendant for purposes of this Count.

All in violation of Title 18, United States Code, Section 2339A.

## COUNT TWELVE

### (Providing Material Support to *Lashkar*)

The SPECIAL JANUARY 2009 GRAND JURY further charges:

1.      The allegations of Paragraph 1 of Count One of this Superseding Indictment are incorporated as though fully stated herein, except that Tahawwur Hussain Rana is identified as a defendant for purposes of this Count.

2.      Beginning no later than in or about late 2005, and continuing to on or about October 3, 2009, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID COLEMAN HEADLEY and
### TAHAWWUR HUSSAIN RANA,

defendants herein, knowingly provided material support or resources, namely, personnel, currency, tangible property, and false documentation and identification, as those terms are defined in Title 18, United States Code, Sections 2339A(b) and 2339B(h), to a foreign terrorist organization, namely, *Lashkar e Tayyiba*, which was designated by the Secretary of State as a foreign terrorist organization on December 26, 2001, pursuant to Section 219 of the Immigration and Nationality Act, and has remained so designated through and including the present time, knowing that *Lashkar e Tayyiba* was a designated terrorist organization (as defined in Title 18, United States Code, Section 2339B(g)(6)); that *Lashkar e Tayyiba* had engaged and was engaging in terrorist activity (as defined in Section 212(a)(3)(B) of the Immigration and Nationality Act); and that *Lashkar e Tayyiba* had engaged and was

32

engaging in terrorism (as defined in Section 140(d)(2) of the Foreign Relations Authorization

Act, Fiscal Years 1988 and 1989), and death resulted to approximately 164 persons.

    All in violation of Title 18, United States Code, Section 2339B.


                                          _____

                                          Grand Jury Foreperson


_____

UNITED STATES ATTORNEY